**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 25-1527
_____

MARLIN ALCIRA LOPEZ-RAMIREZ;
M. D. H.-L.,
Petitioners

v.

ATTORNEY GENERAL UNITED STATES OF AMERICA
_____

ON PETITION FOR REVIEW OF AN ORDER OF
THE BOARD OF IMMIGRATION APPEALS
(Agency Nos. A 208-744-499, 208-746-850)
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
May 15, 2026
_____

Before: SHWARTZ, MASCOTT, and McKEE, <u>Circuit Judges</u>.

(Filed: July 17, 2026)
_____

OPINION[*]
_____

SHWARTZ, <u>Circuit Judge</u>.

Marlin Lopez-Ramirez and her daughter, M.D.H.-L. ("Petitioners"), petition for

---

[*] This disposition is not an opinion of the full court and, pursuant to I.O.P. 5.7, does not constitute binding precedent.

review of the Board of Immigration Appeals' ("BIA") order dismissing their appeal of the Immigration Judge's ("IJ") order denying their applications for asylum, withholding of removal, and relief under the Convention Against Torture ("CAT"). For the following reasons, we will deny the petitions.

I

Petitioners, natives and citizens of Guatemala, entered the United States in 2015 without valid documentation. Shortly thereafter, Petitioners were served with Notices to Appear asserting their removability. Lopez-Ramirez[1] conceded her removability but sought asylum and withholding of removal on account of her membership in a particular social group ("PSG"), as well as CAT relief.

At a hearing before the IJ, Lopez-Ramirez testified that she had been in a relationship with Javilardo Hernandez in Guatemala during which Hernandez beat her with a belt, sexually abused her, and, on one occasion, threatened to harm her family if she told anyone about the beatings. Lopez-Ramirez became pregnant with M.D.H.-L. and moved in with her family in Guatemala. During the year she lived with them, Hernandez appeared at the house and verbally harassed her, though he did not physically harm her or her family.[2] Petitioners then left Guatemala, and for a period of time, Hernandez continued his verbal threats. Lopez-Ramirez has not spoken to Hernandez in

_____

[1] Because M.D.H.-L.'s claim is derivative of Lopez-Ramirez's, we consider their claims together. See Sukwanputra v. Gonzales, 434 F.3d 627, 630 n.1 (3d Cir. 2006) (analyzing derivative claim similarly).

[2] Around this time, Lopez-Ramirez sued Hernandez for child support, and a local court established a custody arrangement. She claimed that Hernandez failed to pay child support and threatened her, but the police failed to act when she reported him.

the five years since her arrival in the United States, and he has taken no action against her family in Guatemala.

Lopez-Ramirez claims that she is entitled to relief from removal to Guatemala because: (1) Hernandez has told people that he was looking forward to her return and that she would not be safe, and (2) articles she submitted show gender-based violence and human rights abuse are prevalent in Guatemala. The IJ disagreed, concluding that her asylum and withholding claims fail because her proposed PSG of "Guatemalan Females" were not defined with particularity nor socially distinct, as "[f]emales in Guatemala encompass persons of all ages," and "varying socioeconomic upbringings . . . backgrounds . . . occupations . . . educational backgrounds . . . cultural norms[;] [o]ther than gender and nationality there is no other distinguishing characteristic within the postulated group." AR 92.[3] The IJ also denied Petitioners' CAT claims as Lopez-Ramirez's fear of torture was not objectively reasonable because, in relevant part, she has had no contact with Hernandez for years and he has not harmed her family since she moved to the United States.

The BIA affirmed the IJ's ruling and dismissed the appeals. Tthe BIA agreed that the proposed PSG "include[s] women of all ages, ethnicities, and social status and is therefore not sufficiently particular." ,[4] AR 4 (citing Chavez-Chilel v. Att'y Gen., 20

---

[3] Likewise, the IJ held the group was not socially distinct as Lopez-Ramirez failed to show "that Guatemalan society views 'Guatemalan females' as members of a distinct group in society." AR 92. Because the lack of a PSG defeated Petitioners' asylum and withholding claims, the IJ did not assess the claims' other elements.

[4] Petitioners raised other PSGs before the IJ but did not reassert them before us. Rather, Petitioners argue that the BIA's failure to remand for the IJ to consider the

3

F.4th 138, 146 (3d Cir. 2021)). The BIA recognized that "all women in a particular country may constitute a legally cognizable particular social group if 'there is . . . record evidence that [they] share a unifying characteristic that results in them being targeted for any form of persecution based solely on their gender,'" AR 4 (quoting Chavez-Chilel, 20 F.4th at 146), but Petitioners failed to identify such a "unifying characteristic."[5] AR 4. The BIA also agreed with the IJ that Petitioners' CAT claims failed because Petitioners did not show it was more likely than not that Hernandez would torture Lopez-Ramirez if she returned to Guatemala.[6]

Petitioners petition for review.

II[7]

---

proposed PSG of "women in Guatemala who are unable to leave their relationship" was error because they initially identified that PSG but later had to abandon the argument based on a change in the law. Even if the IJ erred, the error is harmless because, in the interim, the legal basis for cognizability of her chosen PSG was invalidated in Matter of S-S-F-M, 29 I. & N. Dec. 207 (BIA 2025). See NLRB v. Wyman-Gordon Co., 394 U.S. 759, 766 n.6 (1969) (holding remand is unnecessary where it would be "an idle and useless formality").

[5] The BIA also determined that Petitioners failed to show the proposed PSG was socially distinct.

[6] The BIA also reasoned that the IJ sufficiently considered that Hernandez harassed Lopez-Ramirez while she was living apart from him in Guatemala but has not contacted her in five years.

[7] The BIA had jurisdiction pursuant to 8 C.F.R. § 1003.1(b)(3). We have jurisdiction pursuant to 8 U.S.C. § 1252(a). We review the IJ's and BIA's legal determinations, including whether a petitioner has proposed a cognizable PSG, and mixed questions of law and fact, de novo. Zhi Fei Liao v. Att'y Gen., 910 F.3d 714, 718 (3d Cir. 2018); S.E.R.L. v. Att'y Gen., 894 F.3d 535, 543 (3d Cir. 2018) (PSGs). We review their factual findings under the substantial evidence standard, accepting such findings as conclusive "unless any reasonable adjudicator would be compelled to conclude to the contrary." Herrow v. Att'y Gen., 93 F.4th 107, 112 (3d Cir. 2024) (quotation marks omitted); S.E.R.L., 894 F.3d at 543.

4

A

Under the Immigration and Nationality Act, a noncitizen who enters the United States without permission is removable. See 8 U.S.C. §§ 1182(a)(6)(A)(i), 1227(a)(1)(A). For a removable noncitizen to be eligible for asylum, she must show that she either has been persecuted or has "a well-founded fear of persecution on account of . . . membership in a [PSG]." 8 U.S.C. § 1101(a)(42). To be eligible for withholding of removal, she must show "that it is more likely than not that . . . she would be persecuted on account of . . . membership in a [PSG] . . . upon removal to [the designated] country." 8 C.F.R. § 1208.16(b)(2); see also 8 U.S.C. § 1231(b)(3) (statutory removal). Thus, even assuming Lopez-Ramirez suffered persecution in Guatemala, to secure either form of relief, she must show she would be persecuted on account of membership in a PSG.

A PSG must be: "(1) composed of members who share a common immutable characteristic, (2) defined with particularity, and (3) socially distinct within the society in question." S.E.R.L. v. Att'y Gen., 894 F.3d 535, 540 (3d Cir. 2018) (quotation omitted). Relevant here, "[p]articularity 'addresses the outer limits of a group's boundaries and is definitional in nature, whereas social distinction focuses on whether the people of a given society would perceive a proposed group as sufficiently separate or distinct.'" Chavez-Chilel, 20 F.4th at 146 (quoting S.E.R.L., 894 F.3d at 548). "To satisfy the particularity requirement, 'an alleged social group [must] have discrete and . . . definable boundaries

5

that are not amorphous, overbroad, diffuse, or subjective, so as to provide a clear standard for determining who is a member.'" Id. (quoting S.E.R.L., 894 F.3d at 552).

The PSG "Guatemalan women" lacks particularity because generally "a proposed PSG of all women in a particular country 'is overbroad[ ] [as] no factfinder could reasonably conclude that all [of a country's] women had a well-founded fear of persecution based solely on their gender.'" Id. at 146 (quoting Safaie v. I.N.S., 25 F.3d 636, 640 (8th Cir. 1994)).  Although such a PSG could be permissible if all women in a country shared a "unifying characteristic that results in them being targeted for any form of persecution based solely on their gender," id. (contrasting Hassan v. Gonzales, 484 F.3d 513, 518 (8th Cir. 2007), which recognized that "all Somali females have a well-founded fear of persecution based solely on gender given the prevalence of [female genital mutilation]"), Petitioners here failed to make that showing.

Petitioners attempt to identify the "unifying characteristic" of "Guatemalan Females" as the risk of violence that women in their country face due to prevalent femicide today and violence against women during the country's civil war that ended in the 1990s.  Susceptibility to violence in a country where violence is prevalent, however, does not constitute a "unifying characteristic."  See Matter of A-B-, 27 I. & N. Dec. 316, 335 (A.G. 2018) ("Social groups defined by their vulnerability to private criminal activity likely lack the particularity required under M-E-V-G-, given that broad swaths of society may be susceptible to victimization.").  Because Petitioners failed to establish "that all Guatemalan women share a unifying characteristic that results in them being targeted for

6

any form of persecution based solely on their gender," Chavez-Chilel, 20 F.4th at 146,[8]

their proposed PSG is not cognizable. As a result, Petitioners' asylum and withholding

claims necessarily fail.

B

Petitioners' CAT claims also fail. To qualify for CAT relief, an applicant must

show both that: (1) she is more likely than not to be tortured if removed, 8 C.F.R.

§ 1208.16(c)(2), and (2) government officials will likely either cause the feared torture or

acquiesce to torture by non-state actors, id. § 1208.18(a)(1). See Saban-Cach v. Att'y

Gen., 58 F.4th 716, 733 (3d Cir. 2023) (citing Myrie v. Att'y Gen., 855 F.3d 509, 516 (3d

Cir. 2017)). Under the first prong, an IJ must answer: (1) "what is likely to happen to the

petitioner if removed," and (2) "does what is likely to happen amount to the legal

definition of torture?" Id.

Substantial evidence supports the IJ's determination that Lopez-Ramirez was not

more likely than not to suffer harm amounting to torture if she returned to Guatemala.[9]

True, her abuser, Hernandez, severely harmed her while they were living together but,

---

[8] BIA did not conflate cognizability and the nexus requirement. Chavez-Chilel specifically instructs that the particularity analysis pertaining to a proposed PSG of all women in a country requires identifying "a unifying characteristic that results in them being targeted for any form of persecution based solely on their gender." 20 F.4th at 146.

[9] Contrary to Petitioners' contentions, the IJ considered: (1) Hernandez's continued harassment of Lopez-Ramirez once she moved out and his threats after she left Guatemala, and (2) the history of violence against women in Guatemala, especially during the country's civil war. On this latter point, the IJ considered Petitioners' documentary evidence of prevalent violence against women in Guatemala, thought the IJ did not explicitly mention violence against women during the country's civil war. This was not error because Petitioners failed to show Lopez-Ramirez would be likely to suffer torture based on decades-old events upon her return to Guatemala.

even assuming Hernandez's conduct met the legal definition of torture, Petitioners have not demonstrated that Lopez-Ramirez will likely face future harm. Id. at 734 ("Whether a petitioner has been tortured before is a relevant consideration, but there are a number of other factors that the BIA should consider when determining the likelihood of future torture."). Although Hernandez threatened Lopez-Ramirez and her family over the phone after she moved out and for a time after she left Guatemala, the record also shows: (1) Hernandez did not physically harm her or her family once she left him, and (2) Lopez-Ramirez has had no contact with Hernandez in five years. Thus, substantial evidence supports the conclusion that Lopez-Ramirez would not face torture upon return to Guatemala. See Denis v. Att'y Gen., 633 F.3d 201, 218 (3d Cir. 2011) ("[U]nsupported speculation . . . does not rise to the level of proof necessary to demonstrate that [a petitioner] will more likely than not be singled out for torture.").

Thus, the IJ and BIA properly determined that Petitioners are not entitled to CAT relief.[10]

### III

For the foregoing reasons, we will deny the petitions.

---

[10] Because the BIA did not consider the acquiescence prong of Petitioners' CAT claim, we do not reach it. See Khan v. Att'y Gen., 979 F.3d 193, 201 n.6 (3d Cir. 2020) ("[W]e may affirm only on a basis the BIA considered.").